[Sac. No. 3674. In Bank.—August 4, 1927.]

# E. E. WILLARD et al., Respondents, v. GLENN-COLUSA IRRIGATION DISTRICT et al., Appellants.

[1] CALIFORNIA IRRIGATION DISTRICT ACT — COLLECTION OF TOLLS OR RATES FOR USE OF WATER — CONSTITUTIONALITY OF — ADOPTION OF RATES.—The provision of section 55 of the California Irrigation District Act for the collection of tolls or rates for the use of water by the land owners is not unconstitutional; and the board of directors of an irrigation district has authority to adopt rules and regulations for the collection of such tolls or rates for the purpose of defraying the expenses mentioned in said section 55 of said act.

[2] ID.—CONSTRUCTION OF CONSTITUTION — POWER OF LEGISLATURE. — Under section 13 of article XI of the constitution, the legislature is given plenary power over districts organized for reclamation purposes. And this section confers upon the legislature very broad power with respect to the supervision, regulation, and conduct of the affairs of districts of this character.

[3] ID.—LEVYING TOLLS FOR OPERATION—POWER OF DIRECTORS—LEVY ON PART OF OWNERS—CONSTITUTIONALITY OF ACT.—The fact that the board of directors of an irrigation district might, under the provisions of section 55 of the California Irrigation Act, raise all of the costs and expenses of operating and maintaining the district by tolls levied upon water users, rather than by assessments, thus putting the entire burden of maintaining and operating the system upon the land owners using the water, while the other land owners of the district would escape taxation entirely in so far as the same was levied for maintenance purposes, does not render this section of the act unconstitutional.

[4] ID.—INCREASING SCALE OF RATES—VALIDITY OF.—Rules adopted by the board of directors of an irrigation district providing for an ascending or increasing scale of rates for water used by owners of the district are not invalid because there is ample water of the district available to meet all the requirements of the users thereof.

[5] ID. — RULE FOR PAYMENT OF TOLLS IN ADVANCE — LEGALITY THEREOF.—A rule adopted by the board of directors of an irrigation district requiring the payment of tolls in advance is authorized by section 39f of the California Irrigation Act and said section is a valid enactment.

[6] ID. — LIMIT OF ASSESSMENT. — The provisions of section 39 of the California Irrigation District Act limiting an annual assessment to two per cent of the aggregate value of the land within the

district does not apply to tolls raised for the use of water under rules adopted by the board of directors of the district.

[7] ID. — PROTECTION OF SYSTEM — SEEPAGE — PURCHASE OF DRAINAGE MACHINERY—DRAINAGE DITCHES—CHARGE TO OPERATION—DETERMINATION OF BOARD.—Where the trial court found that in order to protect the land of an irrigation district from seepage water the district was required to and did purchase drainage machinery and constructed drainage ditches at great expense, the determination of the board of directors of the district that such expenses should be paid from the operation and maintenance account is conclusive upon the courts.

[8] ID.—METERING OF LANDS—POWER OF BOARD—LACK OF DISCRIMINATION.—The board of directors of an irrigation district has power to meter a part of the lands of the district and not others; and it is held in this case that the action of the board of directors under its rules was not discriminatory and inequitable.

[9] ID.—UNPAID TOLLS—ADDING TO ANNUAL ASSESSMENT—POWER OF BOARD.—Under section 39f of the California Irrigation District Act the board of directors of an irrigation district has power to add the amount of unpaid tolls to the regular annual assessment.

---

(1) 4 C. J., p. 695, n. 99, p. 1058, n. 87.   (2) 40 Cyc., p. 817, n. 85. (3) 12 C. J., p. 798, n. 55; 40 Cyc., p. 835, n. 49.   (7) 40 Cyc., p. 821, n. 21.   (9) 40 Cyc., p. 835, n. 52.

APPEAL from a judgment of the Superior Court of Glenn County. E. P. McDaniel, Judge. Reversed.

The facts are stated in the opinion of the court.

Arthur C. Huston and W. T. Belieu for Respondents.

Hankins & Hankins for Appellants.

A. L. Cowell, *Amicus Curiae,* for Appellants.

CURTIS, J.—This action was instituted by certain land owners of the defendant irrigation district against the Glenn-Colusa Irrigation District and its board of directors to have declared invalid certain assessments against the lands of plaintiffs to the extent that said assessments include any tolls or charges other than the regular annual assess-

---

7. See 26 Cal. Jur. 405.

ment and to enjoin the enforcement of said assessment until said reductions are made. The complaint alleged the incorporation of the district, the names of the directors, the ownership of certain lands therein by the plaintiffs and the use on said lands by plaintiffs of water during the assessment year 1922 for the purpose of irrigating said lands and raising crops thereon, and that at all times during said year there was available to said district sufficient water for the irrigation for any purpose of the whole of the lands comprised in said district. Plaintiffs then allege in their said complaint that under the pretended authority of the California Irrigation District Act the board of directors of said district in March, 1922, adopted certain rules and regulations, among which were rules 6, 6 "A" and 6 "B," which are as follows:

"Rule 6.—Measurements and Rates.

"The district shall be entitled to place meters or other measuring devices and turn outs in such of the ditches, canals and laterals, as they may consider necessary or proper, or may compute the amount of water delivered by reading the electric meters of the water user where water is taken from the canal by electrically operated pumps. Such meters or measuring devices may be used for the whole or any part of the irrigation season or for the whole or any part of a lateral system, and the metered charges based upon the average seasonal use of water as shown by said meters or measuring devices for the period of their installation.

"Rule 6 'A.'—Normal Quantities and Rates.

"Water for the irrigation of general crops and orchards will be charged for at the rate of 75c per acre, for the use of an average of, not to exceed two acre feet per acre irrigated.

"Water for the irrigation of pasture land or for the sprouting of water grass, or for other purposes where but one irrigation for the season is required, will be charged for at the rate of 50 cents per acre for the use of not to exceed one acre foot per acre irrigated. If more than one second foot of water is required for such purposes, the charge shall be the same as for general crops. Delivery of water for these purposes will only be made when water is available.

"Water for the irrigation of rice will be charged for at the rate of $4.00 per acre, for an average of not to exceed 6 acre feet per acre irrigated.

"Rule 6 'B.'—Excess Quantities and Rates.

"Whenever the average use of water for either rice or general crops exceeds said normal quantities as specified in Rule 6 'A,' such additional water as may be supplied will be charged for as follows:

"1st acre foot in excess of normal $.6666 per acre foot.

"2nd acre foot in excess of normal $1.00 per acre foot.

"3rd acre foot in excess of normal $1.75 per acre foot.

"4th acre foot in excess of normal $2.50 per acre foot.

"5th acre foot in excess of normal $3.25 per acre foot.

"All over 5 acre feet in excess of normal $4.00 per acre foot."

Then are set forth in the complaint allegations 8 to 14, as follows:

## "VIII.

"That said Rule 6 is without the authority of the defendants and unlawful in that it purports to create discriminatory methods of ascertaining the quantity of water distributed by said District to different tracts of land comprised in said District.

## "IX.

"That said Rule 6 'A' is without the authority of the defendants and unlawful in that it purports to create discriminatory charges for water distributed by said district.

## "X.

"That Rule 6 'B' is without the authority of the defendants and unlawful in that it purports to create discriminatory charges for water distributed by the district.

## "XI.

"That said Rules 6, 6 'A' and 6 'B' are arbitrary and inequitable in that they create discriminations and preferences between the land owners in said District.

## "XII.

"That said Rules 6 'A' and 6 'B' are respectively without the authority of the defendants and unlawful in that the tolls and charges therein provided for are not required for any of the purposes for which tolls and charges are authorized to be made under the provisions of Section 55 of said Act, or otherwise howsoever.

## "XIII.

"That said Rules 6 'A' and 6 'B' are without the authority of the defendants and are unlawful in that they are not charged to and collectable from all persons using the canal of said District for irrigation and other purposes, but are confined to persons using water for the purposes referred to in said Rules 6 'A' and 6 'B.'

## "XIV.

"That said Rules 6 'A' and 6 'B' are without the authority of the defendants and are unlawful in that they are not intended for any purpose of the District, but are intended solely to prevent the raising of rice on lands within said District."

It is then alleged that acting under the pretended authority of these rules, defendants have caused the quantity of water used by plaintiffs to be ascertained by meter and have for said assessment year charged the plaintiffs with water according to tolls and charges provided for and set forth in rules 6 "A" and 6 "B" and that on October 28, 1922, defendants caused the same to become a part of the assessment against plaintiffs' said lands for said assessment year; that said assessment is unlawful and invalid to the extent of the amount added thereto as aforesaid, and that plaintiffs have at all times been able, willing, and ready to pay the whole of any assessment, toll, or charge lawfully chargeable against them or against their lands.

The defendants in their answer denied that there was available for said district at all times during said year sufficient water for the irrigation for any purpose of the whole of the lands comprised in said district; they then deny that any of the rules and regulations set forth in plaintiffs' complaint is unlawful or invalid and admit that under the authority of said rules and regulations they caused the quantity of water used by plaintiffs to be ascertained by meter and for said assessment year have charged the plaintiffs with water according to the tolls provided for in rules 6 "A" and 6 "B," and that they caused the same to become a part of the assessment against plaintiffs' lands for said assessment year. As a further and separate answer the defendants allege that said district comprised an area of 103,000 acres of land, varying greatly in texture, character, presence of hardpan, and in other respects, and in particular

in reference to the action of water thereon, the quantity of water necessary to raise crops thereon and the loss of water by reason of seepage; that approximately 60,000 acres thereof are of such texture and character as to be what is called typical rice lands or lands upon which rice can be raised economically, profitably, and without unreasonable use or waste of water and without damage to surrounding land; that the balance of said lands of said district are of a loose and porous texture without hardpan and upon which rice cannot be raised except by the excessive use of water and in which use the water is wasted, and damage to other lands occurs by reason of excessive seepage through said lands; that by reason of the difference in the use of water for general crops, rice raised on such typical rice lands and rice raised on the porous lands, it was necessary for the board of directors to make rules and regulations so as to provide for the use of water on all of said lands and to prevent damage to surrounding and adjacent lands through excessive seepage. The defendants then proceed to set forth the steps taken by the board of directors in the adoption of a set of by-laws, rules, and regulations, of which rules 6, 6 "A," and 6 "B" were and are a part; that plaintiffs had knowledge that said by-laws were being formulated; that copies thereof, after their adoption, were sent to the plaintiffs; that plaintiffs in compliance therewith made application for water to be used upon their respective lands during said assessment year and other facts which defendants claim estopped plaintiffs from objecting to said assessment against their said lands. The answer further alleged as separate defenses that plaintiffs' action was barred by the provisions of section 69 and also by the provisions of section 72 of the California Irrigation District Act.

Upon the issues made by these pleadings the action went to trial and the trial court made findings and rendered judgment in favor of plaintiffs. The court found that at all times during said assessment year there was available to said district sufficient water for irrigation for all purposes of the whole of the lands of said district; that said lands consisted of 103,000 acres of land, each acre of which was entitled to its proportion of the amount of water distributed by said district for irrigation purposes based upon the ratio which the last assessment of the owners of said lands bears to the

whole sum assessed upon the district; that rules 6, 6 "A," and 6 "B" were without the authority of said board to adopt and were illegal in the respects specified in the complaint; that defendants have caused the quantity of water used by plaintiffs as found by the court to be ascertained by meter, and have for said assessment year charged the plaintiffs with said water according to the tolls and charges mentioned in rules 6 "A" and 6 "B" and have not caused the quantity of water used by other lands in said district for the growing of rice thereon or otherwise to be metered or otherwise ascertained; that the said actions of defendants are discriminatory, unfair, and unequal; that the assessment based upon said rules is unlawful and invalid to the extent thereto; that at a hearing of said board held on the twenty-eighth day of October, 1922, it was ordered that the unpaid balance of tolls and charges levied and charged for the use of water on the lands of plaintiffs should be added to and become a part of the assessment levied for the year 1922 upon such lands; that thereafter said amounts were purported to be duly ascertained and added to the said assessment, but the same were improperly and unlawfully added to said assessment and are not lawfully a part and portion thereof. The court further found that approximately 60,000 acres in said district are of such texture and character as to be what is known as typical rice lands or lands upon which rice can be raised economically, profitably, and without unreasonable use or waste of water and without damage to surrounding lands; that the balance of the lands in said district are of a loose and porous texture without hardpan and upon which rice cannot be raised except by the use of large quantities of water, but it is not true that rice cannot be raised upon said last mentioned land except by an excessive use of water, nor is it true that in using water for the cultivation of rice on said lands such water is necessarily wasted and damage to other lands occurs by reason of excessive seepage through the lands upon which the water is used; that by reason of the difference in the use of water for general crops, rice crops raised on said typical rice lands and rice raised on porous lands, it was necessary for the board of directors of said district to make rules and regulations so as to provide for the use of water on all of said lands and to prevent waste of water and to prevent damage

to surrounding and adjacent lands through excessive seepage; but it is not true that said rules 6 "A" and 6 "B" in any way provide for the use of water on all of said porous lands or prevent waste of water or prevent damage to adjacent or surrounding lands through excessive seepage or otherwise.  The court then proceeds to find, in accordance with the allegations of defendants' special defense, that the by-laws, rules, and regulations were adopted at meetings of the board of directors at which a large number of land owners of said district were present, but that all of plaintiffs were not present at said meetings; that thereafter copies of said by-laws were sent to each of the plaintiffs, but that it is not true that said plaintiffs had knowledge of said by-laws, rules, and regulations and of the rates fixed by said board of directors at all times mentioned in the complaint.  It then finds that the plaintiffs were not estopped from objecting to the said by-laws, rules, regulations, or rates or from objecting to the assessment based thereon and that plaintiffs' cause of action was not barred by the provisions of section 69 or the provisions of section 72 of the California Irrigation District Act.  The court further finds: "It is not true that all of the lands of the plaintiffs are loose and porous.  It is not true that any of such lands in raising rice thereon require an excessive use of water.  It is not true that said lands do not hold and retain such water, or that same seeps through such lands and thereby wastes such water, or damages surrounding or adjoining lands through any waste or excessive use of water.  It is not true that plaintiffs wasted any water or that by reason of any wasteful use of water by plaintiffs said defendant district was required to make additional expenditures in pumping additional water, or in protecting its canals from breaks or overflow by reason of additional water carried therein for any purpose aforesaid.  It is true that in protecting the lands of the district from a high water table and seepage water, said defendant was required to and did purchase drainage machinery and did construct drainage ditches at a great expense to said district, but it is not true that such high water table and seepage was caused solely by plaintiffs or persons using water for the cultivation of rice.  It is true that a portion of the expense of said machinery and ditches was intended to be paid by or out of the additional income to

be derived from the tolls collected for the use of said water on the lands of the plaintiffs. It is true that defendant district did purchase machinery and construct drainage ditches at a great expense but no portion of such expense is payable by or out of any tolls or charges collected for the use of water.''

Upon these findings the court rendered judgment in plaintiffs' favor: ''That the assessments referred to in the pleadings on file herein be, and the same are hereby declared void and invalid to the extent of the amounts added thereto in respect of the excess tolls and charges mentioned in Rule 'B' referred to in said pleading, and that the said assessments be, and the same are hereby reduced accordingly.'' (Rule ''B'' referred to is evidently intended to mean rule 6 ''B'' mentioned in the pleadings. Said rule is also referred to in the findings as rule ''B.'') The court further decreed that said assessment created no lien on any property of the plaintiffs; that defendants and their agents and servants and all persons acting on behalf of them or any of them be restrained from enforcing said assessment until after reduction as aforesaid and that plaintiffs have and recover from defendant district all payments made by them or any of them in respect of any excess tolls and charges aforesaid and for plaintiffs' costs of suit.

Before proceeding to a discussion of the legal questions arising upon this appeal, it might be well for us to consider the nature of the action as made by plaintiffs' complaint. In brief, the plaintiffs allege in their complaint that the defendants adopted rules 6, 6 ''A,'' and 6 ''B'' without any legal authority so to do, and accordingly said rules are illegal and void; that acting upon the pretended authority of said rules the defendants have metered plaintiffs' lands and charged them rates or tolls for a portion of the water used thereon during the assessment year of 1922 and have added the amount of said tolls to plaintiffs' several assessments for said year, and plaintiffs ask that the collection of said assessment be enjoined until the amount of said tolls are deducted therefrom. It will be noted that the only complaint plaintiffs make is that they were required to pay tolls or water rates for water used by them during said year instead of being furnished water for their said lands to be paid for by regular annual assessment. It will further be

noted that plaintiffs do not complain of any discrimination against them in any manner whatever. There is no allegation in the complaint directly charging or from which it can be reasonably inferred that plaintiffs are treated any differently from other land owners of the district owning lands similar to those of the plaintiffs or that they are charged any different or higher rates for the water used by them than the other land owners of the district are compelled to pay for a like amount of water used under the same conditions as plaintiffs have used the water for which they are charged. In other words, plaintiffs' sole contention as made by their complaint is that the district has no authority to charge tolls or rates for water used, but that the sole authority of the district to charge and collect for water used by the land owners is by an assessment against the property of said land owners situated in said district.

By reference to the findings it will be seen that they are confined to the issues made by the pleadings in most instances, but not in all. In finding 12, for instance, it is found that defendants have caused plaintiffs' lands to be metered and have charged the plaintiffs according to tolls and charges mentioned in rules 6 "A" and 6 "B" and have not caused the quantity of water used by other lands in said district for the growing of rice or otherwise to be metered or otherwise ascertained; that said acts of defendants are discriminatory, unfair, and inequitable. This finding is wholly without the issues made by the pleadings and has no part or place in the action whatever, and cannot be considered herein. This must be so for the reason, as we have already seen, that the complaint contains no allegations that the defendants have discriminated against the plaintiffs by metering their lands and failing to meter lands of others similarly situated. It is true plaintiffs allege that said rules are discriminatory and therefore illegal, but they fail to allege that the defendants operating under said rules have in any way discriminated against said plaintiffs.

It will be further noted that while the court purports to find that rules 6, 6 "A," and 6 "B" were without the authority of said board to adopt and were illegal in the respects specified in the complaint, the judgment decrees that the assessments are void and invalid only to the extent of the amounts added thereto in respect to the excess tolls and

charges mentioned in rule "B" (6 "B") and such judgment directs that the assessment be reduced accordingly. By the judgment, therefore, that portion of the assessment levied in pursuance of rules 6 and 6 "A" is not affected. It will be remembered that rule 6 provides for the metering of the lands of the district in whole or in part and that rule 6 "A" provides for the "normal rates" to be charged for the use of water under the meter system, while rule 6 "B" provides for the "excess rates" charged under said system. It is apparent, therefore, that the only part of said assessments invalidated by the judgment is that portion thereof which includes the "excess rates" charged plaintiffs. The judgment, therefore, tacitly sustains the right of the district to meter the lands thereof and to charge the "normal rates" provided in rule 6 "A" for the use of water thereon under the meter system. The plaintiffs have not appealed from said judgment and, therefore, are not in a position to complain of its effect as to them. The defendants have appealed and the only question raised by their appeal is to that portion of said judgment which decrees that the assessments are "void and invalid to the extent of the amounts added thereto in respect of the excess tolls and charges mentioned in Rule 'B' " (6 "B"). Respondents, however, have raised the question of the power of the board of directors of said district to meter the lands thereof and to charge either the normal or excess tolls or rates provided in said rules. This argument is probably made upon the theory that if the board is without such authority, then all that part of the said assessment made up of charges for normal or excess rates is invalid and void and if the whole is invalid and void, then that portion in respect to excess rates is invalid and void. Appellants have met respondents' arguments practically under the same theory. The brief filed by the *amicus curiae* is evidently filed upon the theory that the question of the power and authority of the irrigation district to levy and collect tolls is one and probably the most important question presented on this appeal. We will, therefore, consider this question as one properly within the scope of this appeal and will attempt to arrive at the correct determination thereof. It is appellants' contention that the board of directors of said district under the California Irrigation District Act was clearly within its power

in adopting said by-laws, rules, and regulations in which rules 6, 6 "A" and 6 "B" were a part thereof and that rules 6, 6 "A" and 6 "B" are legal and valid. If the board of directors of said district has the authority and power to adopt these rules to govern the charges for the use of water in said district by the land owners therein, then there can be no doubt of the validity of the assessment complained of. On the other hand, if these rules are beyond the power of the directors of said district to enact, then all proceedings thereunder leading up to said assessment are illegal and void.

By the adoption of these rules the board of directors of the district has attempted to provide a complete plan or scheme for the distribution of the water of the district among the land owners therein and for the payment by said land owners for the use of said water in the manner provided in said rules. This plan contemplates first a basic charge estimated at 60 cents an acre to be raised by annual assessment to cover "Bond principal and interest, together with the balance of maintenance charges." By this we understand the district raises by assessment an amount estimated at 60 cents per acre to cover the principal and interest on the bonded indebtedness and to meet the balance of maintenance charged after applying to maintenance the amount received as tolls or rates for water used. These rates or tolls are fixed as follows:

Normal Rates.

Water for pasture land where but one irrigation for the season is required, 50 cents per acre.

Water for general crops not to exceed two acre-feet per acre, 75 cents per acre.

Water for irrigation of rice for an average of not to exceed 6 acre-feet per acre irrigated, $4 per acre.

Then follows the "Excess Rates" which provide for an ascending scale or charges increasing as the amount of water per acre increases and finally the rules provide for the time when the tolls shall be paid. In this connection it might be stated that by this provision the tolls are made payable in installments, some of said installments being made payable and collected in advance.

[1] Respondents contend in the first place that the board of directors of an irrigation district are without any au-

201 Cal.—47

thority whatever to impose tolls for the purpose of defraying the expense mentioned in section 55 of the California Irrigation District Act and that said section 55, in so far as it provides for the collection of tolls or rates for the use of water by the land owners, is unconstitutional. [2] By section 13 of article XI of the constitution it is provided: ''that the legislature shall have power to provide for the supervision, regulation and conduct, in such manner as it may determine, of the affairs of irrigation districts, reclamation districts or drainage districts, organized or existing under any law of this state.'' Under this section of the constitution this court has held that ''It is settled in this state that the legislature has plenary power over districts organized for reclamation purposes'' (*Barber* v. *Galloway*, 195 Cal. 1, 6 [231 Pac. 34, 35]). In this same case this court, on page 16 of the decision, also said: ''Furthermore, article XI, section 13, of the California constitution confers upon the legislature a very broad power with respect to the supervision, regulation, and conduct of the affairs of districts of this character.'' (Irrigation districts.) In pursuance of these broad and plenary powers invested in the legislature by the constitution, section 55 of the California Irrigation District Act was enacted, which is in part as follows: ''For the purpose of defraying the expenses of the organization of the district, and of the care, operation, management, repair, and improvement of such portions of such canal and works as are completed and in use, including salaries of officers and employees, and installments of rental or consideration accruing under any lease or contract as hereinabove in this section mentioned, the board may in lieu (either in part or in whole) of levying assessments as herein provided for, fix rates of toll and charges, for irrigation and other public uses declared by this act, and collect the same from all persons using said canal for irrigation and other purposes.''

In support of their contention that this section is unconstitutional respondents do not rely on any decision of the courts of this state. They have, however, cited a number of authorities from other jurisdictions which they contend bear out their claim that said section is unconstitutional. These authorities at best are only indirectly in point and in none of them is discussed the question of the power of the legislature to invest the board of directors of an irrigation

district with authority to levy tolls or rates for the purpose
of defraying the expense of the operation and maintenance
of an irrigation system.  Of the cases relied upon by re-
spondents, those most nearly in point are *Otis Orchards Co.*
v. *Otis Orchards Irr. Dist. No. 1,* 124 Wash. 510 [215 Pac.
23], *Nampa & Meridian Irr. Dist.* v. *Bond,* 283 Fed. 569, and
*Colburn* v. *Wilson,* 24 Idaho, 94 [132 Pac. 579].  These
cases involve the right of an irrigation district to levy an
assessment upon all the lands within the district to pay
for the maintenance of the system.  For instance, it was
contended in the Otis case that one who is not using any
water upon his lands in said district was not liable for any
assessment to pay for the maintenance and upkeep of the
system and the court held "that the owner of irrigable land
within a district must respond to the annual assessment for
the operation and maintenance of the system, where the
water is made available for his use, even though he does
not use it."  The question of meeting this expense in whole
or in part by means of tolls charged for the water used
was not mentioned nor considered.  Neither was it the sub-
ject directly or indirectly of the decision in either of the
other two cases above referred to.  We are of the opinion,
therefore, that they are of slight, if any, value in determin-
ing the question of the validity of said section 55 which pur-
ports to confer such power upon the board of directors of
an irrigation district.  This question appears never to have
been directly before the appellate courts of this state.  Yet
the authority of the district to levy tolls was discussed in at
least two cases before this court and such authority it seems
was not questioned on either of said occasions.  These cases
are *Danley* v. *Merced Irr. Dist.,* 66 Cal. App. 97, 110 [226
Pac. 847, 852], and *Wores* v. *Imperial Irr. Dist.,* 193 Cal.
609, 632 [227 Pac. 181].  In the first of these cases the court
said: "Section 55 of the California irrigation laws (Stats.
1911, p. 516, sec. 11) authorizes the board of directors of the
irrigation districts, instead of levying assessments, to fix
rates of toll charges for irrigation or other public uses de-
clared by the act and collect the sum from all persons using
the canal for irrigation or other purposes.  As this is a
legislative grant and a continuing power, we think the pro-
visions of paragraph 8 purporting to waive the right to
exact tolls without the power of the board of directors and,

therefore, void." A hearing of that case in this court was denied. In the Wores case this court, on page 632, said: "This being so, the power of the board of directors to provide for the raising of such additional money for the needs of said district over and above that provided by the means of an assessment is to be found within the terms of section 55 of the general Irrigation Act, which provides that 'The Board may in lieu (either in part or in whole) of levying assessments as herein provided for fix rates of tolls and charges for irrigation and other public uses declared by this act, and collect the same,' etc. The phrase in parentheses in the above quotation from said act plainly means that the board of directors may employ both methods of raising money for the purposes of the district as defined by law. In the fixation of tolls and charges for the use of its water by the various classes of users to whom it is to be supplied, the board of directors of the district is invested with very large discretion by the general terms of the law giving that power, and which the courts ought not to interfere with in the absence of a clear showing of an abuse of that discretion. The remedy of the land owner or water user for the imposition of an undue burden by assessments or tolls or both is that of effecting a change in the directory of the district by the means provided in the acts relative to the selection of those who are from time to time entrusted with the conduct of the affairs of the district."

[3] It is true that in neither of these cases was the constitutionality of the statute raised. Nevertheless, in the face of these clear pronouncements of this court upon the power of the district to charge tolls, we would hesitate to declare the statute unconstitutional without clear and convincing reasons therefor are presented. The only reason advanced by respondents against the constitutionality of this section is that should the board attempt to exercise the extreme limits of the power given it by said section and raise all the costs and expenses of operating and maintaining the system by tolls rather than by assessments, then the entire burden of maintaining and operating the system would be cast upon the land owners using the water, and the other land owners of said district would escape taxation entirely in so far as the same was levied for maintenance purposes. It is not claimed that the defendants have in the proceed-

ings now under consideration attempted to resort to any such extreme measures.   On the other hand, the rules and regulations provide for a basic charge of 60 cents per acre upon all lands of the district, a portion of which is applied toward the expense of maintaining and operating the system.   But suppose that the board of directors had attempted to raise by means of tolls the total cost of operation and maintenance?   Would it necessarily follow that their action was illegal, this authority having been conferred upon them by the legislature under the broad powers given to the legislature by the constitution?   The system of charging rates or tolls for the maintenance and operation of water systems is used almost entirely in municipalities owning their own systems, and quite often in such municipalities not only the cost and expense of operation and maintenance, but the amounts due upon principal and interest on the bonded indebtedness are raised by tolls and rates.   As to the lands in an irrigation district, it might be that some of said lands receive no benefit whatever from the irrigation system.   In such a case would there be anything inequitable if the legislature should provide in such a case that such lands might be excluded from the cost of maintaining the irrigation system from which they received no benefit?   Would the constitutional rights of the land owners who are receiving the entire benefit of said system be invaded by such a statute?   We think not.   It is not to be presumed that the board of directors of the district is going to act arbitrarily in exercising any power with which they are invested.   If the board of directors should unlawfully discriminate against any of the land owners in levying an assessment or should arbitrarily impose unjust tolls upon any of such land owners, the courts are open for the redress of any wrongs that may be suffered by said land owners from such arbitrary or illegal action by said directors.   In our opinion there is but little that can be said against the reasonableness of the provisions of section 55 of the California Irrigation District Act, but much that can be said in favor of its provisions, especially when applied to a district situated as the Glenn-Colusa Irrigation District is situated.   Evidently from the record before us the lands in said district vary greatly in their fertility, in their adaptation to different crops and in the amount of water required to produce crops thereon.   Re-

spondents claim that the only fair and legal method of raising the necessary money with which to pay the cost and expense of maintaining the system is by an *ad valorem* tax upon all the lands within the district, in which event the water for irrigation purposes would be apportioned proportionately to each land owner upon the basis of the ratio which the last assessment of such owner for irrigation purposes within said district bears to the whole sum assessed upon the district. (Sec. 18.) Under the strictly assessment plan lands having high valuation and requiring only a small amount of water would, of course, pay a relatively large assessment, in which event the owner thereof would be entitled to receive a proportionate amount of water, possibly largely in excess of his needs. On the other hand, land of less value might require a large amount of water. Following the rule, however, as applied to the first piece of land the amount of water this land owner would receive would be in proportion to the amount of assessment paid by him, based upon the value of his land. It would possibly transpire that he would be without sufficient water to meet the requirements of his land. It is true the first land owner with an excess amount of water may sell or assign his excess water to his neighbor who is without sufficient water, but he is not obliged to sell it to anyone. In case he should refuse to sell his excess water, the second land owner is without sufficient water to properly irrigate his land, while the excess water of the first land owner is permitted to run to waste. Such a situation is contrary to every principle of the law governing the use of water from the time when water was first applied for irrigation purposes in this state. It may be assumed, however, at least in most instances, that the land owner with an excess amount of water will be willing to sell the water which he will not require for his own land to the land owner whose supply is insufficient for his purposes. Yet it leaves the second land owner in an unsettled and uncertain condition. He has no permanent supply of water adequate for his needs. He may be able one year to purchase sufficient water for his land and the next year he may not. He is always dependent upon his ability to go out to those who have excess water and acquire sufficient for his own needs. If he fails in this respect his crops are a failure. The water he is entitled to, therefore, is of little

or no value to him. It is needless to say that such an uncertainty is not conducive to the operation of a successful farming venture. On the other hand, by giving to the board of directors the power to raise the whole or a part of the cost of maintenance by tolls as has been done by the enactment of said section 55, every land owner of the district is given an opportunity to the extent of the water supply of the district of securing a definite, certain, and adequate supply of water for his lands. It appears to us that such a statutory provision is not only within the power of the legislature under the constitution to enact, but that it affords an elastic system under which the affairs of the district may be operated to the end that the objects and purposes of the statute may be fully realized. We are, therefore, of the opinion that section 55 is not subject to the criticism that it is unconstitutional.

There is nothing new in the provisions of this act regarding the power of the directors to raise by these two methods the cost and expense of operating and maintaining the irrigation system of the district. A similar provision to that contained in the present act is to be found in the original Irrigation District Act, commonly known as the Wright Act, passed in 1887 (Stats. 1887, p. 29). In section 37 of this act will be found the following provision: "For the purpose of defraying the expenses of the organization of the district, and of the care, operation, management, repair, and improvement of such portions of said canal and works as are completed and in use, including salaries of officers and employees, the Board may either fix rates of tolls and charges, and collect the same from all persons using said canal for irrigation and other purposes, or they may provide for the payment of said expenditures by a levy of assessments therefor, or by both said tolls and assessments; . . . " It has, so far as our information goes, remained an integral part of every irrigation act adopted in this state since the enactment of the original statute. It has been upon the statute books of this state for over forty years. While its constitutionality has never been passed upon by this court, this question, so far as our knowledge goes, has never been raised. It is hardly possible that in all the litigation that has been before the courts of this state regarding irrigation districts in their various ramifications, the validity of this

provision of the statute would not have been attacked had there been any question of its constitutionality. The fact that no proceeding prior to the present one has ever been brought before this or any of the appellate courts of this state in which the constitutionality of this provision of the statute has been questioned is most convincing proof that the profession as a whole has regarded its validity unassailable. It is unnecessary to call attention to the wide extent to which irrigation districts are now in use, as it is common knowledge that they are one of the principal agencies through which the waters of the state are conserved and made profitable for irrigation and domestic purposes. Many of these districts are no doubt providing for either the whole or a part of the cost of maintenance and operation by means of tolls as provided by this section of the act. To now hold that these districts are without power to fix rates of tolls and charges to meet either the whole or a part of the cost of operation and maintenance would no doubt cause the greatest confusion to exist in the business affairs of these districts and might possibly in some instances disrupt the districts themselves. A statute which has been acquiesced in and acted upon for so long a period of time should not be lightly set aside or declared illegal except after the most clear and convincng demonstration of its invalidity. No such a showing has been made in this case regarding those provisions of section 55 complained of. For this reason, as well as those already stated, we are not disposed to declare invalid any of the provisions of said section.

This disposes of the question as to the power of the board of directors to adopt rules and regulations providing for the levying and collection of tolls to pay in whole or in part the cost of maintenance and operation of the system. [4] Respondents further contend, however, that conceding this power to be in the board of directors, yet the rules so adopted, and particularly certain portions of rules 6, 6 "A," and 6 "B," are invalid for other reasons. The first contention made by respondents in this respect is that said rules are invalid in so far as they provide for an ascending or increasing scale of rates for water used. No authority is cited in support of this contention. The only argument advanced against such a rule is that the court found that

there was ample water of the district available to meet all the requirements for the users of water in the district. Therefore, if the purpose of said rule was to discourage the excessive use of water or to prevent waste, respondents contend that under the finding just referred to such a rule was unnecessary and therefore invalid. We are not impressed with this argument. It is obvious that such a rule would tend to encourage the economical use of water by the land owners of the district. The fact that there is ample water available for the needs of the district furnishes no excuse for the excessive use or waste of water, nor would that fact relieve the directors of the district of the duty to adopt all reasonable measures to prevent the excessive use and waste of water. Many of the government projects have adopted this method of fixing charges for the use of water under governmental control, and we have not been cited to any instance in which it has been held to be illegal or an unreasonable requirement upon those to whom water is furnished. It has always been the policy of the law of this state to discourage an excessive use of water or a waste thereof by those entitled to its use. We are not prepared to say, therefore, that this provision of the rule is unreasonable or is an unwarranted exercise of power on the part of the directors.

[5] It is next objected that the rule requiring the payment of tolls in advance is illegal. By reference to rule 6 ''B'' it will be seen that the rates or tolls charged for water used during the year are payable in installments over a period of time from May 1st to August 15th of each year, and that for any water used after said last-named date, the charges therefor are made payable on the fifteenth day of each month thereafter. The authority to make such a rule is admittedly given to the board of directors by section 39f of the act. We have carefully read and reread respondents' argument in support of their contention that this section of the act is invalid, but we must admit our inability to agree with it or to give it the force and effect claimed for it by respondents. It appears to us that this contention of respondents is without any merit whatever.

[6] The claim is further made that the assessment is illegal in that it exceeds the limit fixed by section 39 of the

act. This section provides that the board of directors may levy an annual assessment not exceeding two per cent of the aggregate value of the lands within the district according to the last duly equalized assessment-roll thereof for any of the purposes of said act. The amount of the assessment levied by the directors for the assessment year 1922 was one and one-tenth per cent upon the assessed value of said lands. Respondents claim that there is evidence that the amount raised by the district by means of tolls *and* the annual assessment exceeds this two per cent limit provided for by the act, and it is respondents' contention that this shows a violation of the provisions of section 39 and renders the assessment invalid. The act in plain terms provides that these expenses and charges may be raised by tolls or by an annual assessment or by both tolls and an annual assessment. It then provides that the limit of the annual assessment shall be two per cent upon the assessed value of the property in the district. Had the legislature intended to limit the aggregate amount to be raised by these two methods to the two per cent mentioned in the section, it would have been a simple matter to have so provided. As the limitation applies simply to the amount of taxes to be raised by the annual assessment, there is no authority to extend it to include additional amounts of money raised by other methods.

[7] It is further contended by respondents that, assuming that rules 6, 6 "A" and 6 "B" are valid, yet the board of directors had no authority to use the money raised thereby to pay in whole or in part for a drainage system constructed in said district. The trial court found that in order to protect the lands of said district from seepage water the district was required to and did purchase drainage machinery and did construct drainage ditches at great expense, and that a portion of the expense of said machinery and ditches was intended to be paid out of the additional income to be derived from tolls collected from the use of water on the lands of plaintiffs. It is respondents' claim that the cost of installing said machinery and constructing said ditches should be paid entirely from the construction fund of the district and that such charges cannot be construed as part of the cost of maintenance and operation of said district. The trial court took the same view of the

law and accordingly held that no part of said expense could
be lawfully charged to operation or maintenance or paid
from funds raised by tolls or water rates. In this we think
the court erred. This identical question was before the
courts of the United States in the case of *Nampa &
Meridian Irr. Dist.* v. *Bond,* 268 U. S. 50, 53 [69 L. Ed.
843, 45 Sup. Ct. Rep. 383, see, also, Rose's U. S. Notes].
In that case the court said: "Expenditures necessary to
construct an irrigation system and put it in condition to
furnish and properly to distribute a supply of water are
chargeable to construction; but when the irrigation system
is completed, expenditures made to maintain it as an efficient
going concern and to operate it effectively to the end for
which it was designed, are, at least generally, maintenance
and operating expenses. The expenditure in question was
not for extensions to new lands or for changes in or addi-
tions to the system made necessary by faulty original con-
struction in violation of contractual or statutory obligations,
*Twin Falls Co.* v. *Caldwell,* 272 Fed. 356, 369; 266 U. S.
85 [69 L. Ed. 178, 45 Sup. Ct. Rep. 22], but was for the
purpose of overcoming injurious consequences arising from
the normal and ordinary operation of the completed plant
which, so far as appears, was itself well constructed. The
fact that the need of drainage for the district lands, already
existing or foreseen, has been supplied and the cost thereof
charged to all the water users as a part of the original
*construction,* by no means compels the conclusion that an
expenditure of the same character, the necessity for which
subsequently developed as an incident of operation, is not
a proper *operating* charge." Prior to the decision of this
case it had been before the United States circuit court (288
Fed. 541), and on this occasion the court said: "In other
words, the expense of preventing injury by seepage result-
ing from operation is a proper operation charge; or, at
least, the determination of the Secretary of the Interior
to that effect is controlling upon the courts." As the
court found that this was a necessary expense and the board
determined that it should be paid from the operation and
maintenance account, we feel, in the language of the circuit
court of appeals, that such determination is controlling
upon the courts.

[8] The next contention of appellants is that the action of the board of directors of the district under said rules was discriminatory and inequitable. In this, regard respondents claim that the board had no authority to meter a part of the lands of the district and not others. This court apparently has held to the contrary (*Sheward* v. *Citizens' Water Co.*, 90 Cal. 635, 641 [27 Pac. 439]; *Spring Valley Water Works* v. *San Francisco*, 82 Cal. 286 [16 Am. St. Rep. 116, 6 L. R. A. 756, 22 Pac. 910, 1046]). But there is no finding to the effect that the board of directors has metered certain lands and refused to meter others of the same character. The court found, as we have before stated, that there were two kinds of rice lands in the district, one known as typical rice lands upon which rice could be raised profitably without an excessive amount of water and the other whose soil was of a loose, porous texture without hardpan and upon which rice could not be raised except by the use of large quantities of water. The court found that while the board of directors had caused respondents' lands to be metered, it had not caused "the quantity of water used upon other lands in said district for the growing thereon of rice, or otherwise, to be metered or otherwise ascertained." As to respondents' lands the court found: "It is not true that all of the lands of plaintiffs are loose and porous." This is not a finding that any particular part of plaintiffs' lands is not loose or porous. In so far as this finding attempts to define the character of plaintiffs' lands, practically all of said lands may be loose and porous. Taking these two findings together it may be reasonably inferred therefrom that respondents' lands, being loose and porous, were not metered, but the other rice lands, those known as typical rice lands which required a less amount of water than loose and porous lands, were not metered. It is obvious, therefore, from the findings that the court found no facts which would justify the conclusion that the action of the board of directors in the respect just considered under said rules was either discriminatory or inequitable. In this connection we might consider the claims of respondents that the evidence shows that lands were metered by the board only when and after protests had been filed with the board against the supplying of water thereto for the purpose of growing rice upon

said lands: It appears that in many parts of said district there was opposition to the growing of rice for the reason that its cultivation required a large amount of water to be brought and kept standing upon the lands used for that purpose. The seepage of water from these lands tended to damage adjacent and surrounding lands and for that reason the owners of these adjacent lands would protest against the growing of rice in the vicinity of their own lands. While there is evidence in support of the claim of respondents that in a number of instances the board metered lands only after such protests had been filed by adjacent land owners, yet the court failed to make any finding predicated thereon. Just what effect this evidence had upon the court we are left to conjecture, but evidently it did not impress the court as of sufficient importance to warrant a finding based upon it. It may be, as there were no allegations in the complaint directed against the board of directors in this respect, that the trial court was of the opinion that it would not be warranted in finding a fact which was not responsive to the pleadings. As there was no such finding, the judgment of the court cannot be held to have been based thereon, and, therefore, the mere presence of this evidence in the record cannot have any controlling effect upon the final determination of this action. [9] The objection that the board of directors had no authority to add the amount of the unpaid tolls to the regular assessment and make them a part of the annual assessment for the year is answered by the terms of section 39f of the act, which expressly authorizes such action to be taken by the board.

This disposes of all the important questions raised against the validity of said assessments. It follows from what we have said that the evidence is insufficient to support the findings upon which rests the judgment decreeing that said assessments are invalid to the extent of the excess tolls charged under said rule 6 "B." The judgment should be reversed for this reason. It should also be reversed for the further reason that it provides for the repayment to respondents of the several amounts paid by them respectively on account of said excess tolls. The complaint contains no averment that the respondents, or any of them,

had paid any of said excess tolls or any part thereof and there is no finding that any such payment had been made. This part of the judgment, therefore, even should it be assumed that such tolls are invalid, would not be justified by the pleadings nor supported by the findings.

For the reasons hereinbefore given the judgment is reversed.

Preston, J., Shenk, J., Seawell, J., Waste, C. J., and Langdon, J., concurred.

Rehearing denied.