294 P.2d 636

Deane F. STAHMANN, Trustee, W. Silver, and B. M. Mayfield, Plaintiffs-Appellants,

v.

ELEPHANT BUTTE IRRIGATION DISTRICT, Defendant-Appellee.

No. 6028.

Supreme Court of New Mexico.

March 6, 1956.

Whatley & Oman, Las Cruces, for appellants.

Edwin Mechem, J. D. Weir, Las Cruces, for appellee.

SADLER, Justice.

The plaintiffs as appellants here complain of a judgment of the district court of Dona Ana County in consolidated suits of a declaratory nature against Elephant Butte Irrigation District in which the court denied the right of each plaintiff to the refund of certain amounts paid for so called excess waters for the irrigation of their lands for the years 1948 and 1949. The parties will be designated in the opinion as they were in the court below.

The defendant, Elephant Butte Irrigation District, is duly incorporated under the laws of the state of New Mexico and was formed for the purpose of cooperating with the United States under the federal reclamation laws. The district's dam is located in Sierra County, New Mexico, where it impounds waters of the Rio Grande and supplies it for irrigation of classified lands below the dam, large areas of which are located in Dona Ana County. During the years 1948 and 1949, the plaintiff, B. M. Mayfield, was the owner of a net classified area of 99.18 acres of agricultural land within the district, subject to irrigation and entitled to water for that purpose. Likewise, in 1948 and 1949, the plaintiff, Deane F. Stahmann, as Trustee, owned certain agricultural lands within the district consisting of net area of 2,743.27 acres of classified lands, also subject to irrigation and entitled to water for such purpose.

Throughout the two years mentioned the defendant irrigation district, pursuant to its rules and regulations, denominated as "excess water," all waters delivered to the lands of its users, including plaintiffs, in excess of one acre foot, which quantity of wa-

ter was referred to as the minimum. All of the facts recited above are within the findings of the trial court, and incorporated in its decision. In addition, the court found the following pertinent facts, to wit:

"VII. That during the year 1948, the Defendant denominated as 'excess water', all waters delivered to the lands of its users, including Plaintiffs, in excess of 1 acre foot, which said first acre foot was referred to as the 'minimum'.

"VIII. That during the year 1948, the Defendant delivered to the lands of Plaintiff, B. M. Mayfield, 'Excess water' in the amount of 439 acre feet, for which it imposed upon said Plaintiff a charge of $771.10.

"IX. That during the year 1948, the Defendant delivered to the lands of Plaintiff Deane F. Stahmann, Trustee, 'excess water' in the amount of 15,700 acre feet, for which it imposed upon said plaintiff the charge of $26,270.00.

\*  \*  \*  \*  \*  \*

"XI. That during the year 1949, the Defendant levied a charge of $1.00 for the first acre foot of 'excess water'; $1.15 for the second acre foot of 'excess water'; $1.55 for the third acre foot of 'excess water'; $1.80 for the fourth acre foot of 'excess water'; and $1.80 per acre foot for all waters in excess of the fourth acre foot of 'excess water'.

"XII. That during the year 1949, the Defendant delivered to the lands of Plaintiff B. M. Mayfield, 'excess water' in the amount of 374 acre feet, for which it imposed upon the Plaintiff a charge of $332.20.

"XIII. That during the year, 1949, the Defendant delivered to the lands of plaintiff Deane F. Stahmann, Trustee, 'excess water' in the amount of 16,590 acre feet, for which it imposed upon said Plaintiff a charge of $16,726.00.

\*  \*  \*  \*  \*  \*

"XV. That the Plaintiffs, in February of the year 1949, paid under protest the 1948 charges and in February of 1950, paid under protest the charges for the year 1949.

"XVI. That on March 6, 1950, the Plaintiff, B. M. Mayfield, filed his complaint herein, for recovery of charges paid.

"XVII. That on March 21, 1952, Plaintiffs Deane F. Stahmann, Trustee, and W. Silver, filed their Complaint for recovery of charges paid.

"XVIII. That in the year 1949, Plaintiff B. M. Mayfield was not delivered nor charged with any water in excess of three acre feet.

"XIX. That the measuring technique used by the Defendant for measuring water delivered to the lands of the Plaintiffs during the years 1948 and 1949 was the best available, and was accurate.

"XX. That the amounts of water charged to the Plaintiffs by the District for the years 1948 and 1949 were delivered to the lands of the Plaintiffs by the Bureau of Reclamation.

"XXI. That the water was delivered to the lands of the Plaintiffs in the years in question under written application and contract between the District and the Plaintiffs.

"XXII. That the Plaintiffs had notice on November 1st of each year, of the amounts of water for which they were charged during the current year, which became due and payable on February 1 of the succeeding year, and during the irrigation season of each year received monthly statements of the amount of water delivered to their lands.

"XXIII. That in the year 1948, the stored water for irrigation of lands within the district were considerable below normal, and the landowners in the district were faced with serious shortage of water.

"XXIV. That the average consumption and use of irrigation water on lands within the District for normal crop production is three acre feet per acre.

"XXV. That in said District, the irrigation season usually begins about March 1 of each year.

"XXVI. That under the contract between the Elephant Butte Irrigation District and the Department of the Interior, made and entered into in the year 1937, the Secretary of the Interior notified the District on or before September 1 of each year the estimated operation and maintenance costs of the succeeding year. Thereafter, if, in the opinion of the Secretary of the Interior, the estimate for the operation and maintenance cost appears to be insufficient to meet the actual cost, he shall give notice of such threatened deficiency, and his estimate of the amount due therefor, and the District's share thereof, and the District is required to pay said deficiency within 15 days from date of notice, and should the District fail to make payment of any operation and maintenance charges at the time and in the manner so provided, the United States is under no further obligation to deliver water to any lands in the District beyond the funds available therefor."

Counsel for the plaintiff argue their appeal under two points, the first of which is that the district courts of New Mexico have jurisdiction over irrigation districts organized under the laws of this state and formed for the purpose of cooperating with the United States under federal reclamation laws. Counsel for the defendant do not contest the plaintiffs on this matter as a general proposition. Of course, say defendant's counsel, the district courts of this state have general jurisdiction to hear and

determine controversies in proper cases as between the plaintiffs and the defendant. Since our decision in Sperry v. Elephant Butte Irrigation District of New Mexico, 33 N.M. 482, 270 P. 889, the jurisdiction of our district courts over irrigation districts so organized would not seem open to question.

What counsel for defendant do contend with much vigor, however, is that for reasons set forth in its motion to dismiss, as to each complaint seeking refunds as not timely filed, and as not stating a cause of action for the relief claimed, the district court was without authority or jurisdiction to grant the relief prayed for in those particular suits.

It is under their second point that the plaintiffs expend themselves in an effort to convince us of error in the judgment rendered against them. Counsel for the defendant make a fair statement of the argument of plaintiffs under this point in saying it involves a claim that defendant has no lawful authority to assess and collect tolls and charges from water users on a graduated scale for waters delivered in excess of the minimum one acre foot assessment, where the purpose of such tolls and charges is to raise revenues, has no relationship to the cost to appellee of delivery thereof or to benefits conferred on the users, and does not have as its object the conservation of water.

The pertinent sections of the enabling statute governing irrigation districts such as the defendant follow. 1953 Comp. § 75–24–28, provides:

"For the purpose of defraying the expenses of the organization of the district, and the care, operation, management, repair and improvement of all canals, ditches, reservoirs and works, including salaries of officers and employees, or for payment of charges to the United States for the temporary rental of water, the board may either fix rates of tolls and charges and collect the same of all persons using said canal and water for irrigation, or other purposes, and in addition thereto may provide, in whole or in part, for the payment of such expenditures by levy of assessments therefor, as heretofore provided, or by both tolls and assessments; Provided, that if any contract be made with the United States the charge for operation and maintenance of the district and for temporary rental of water may be fixed in accordance with the federal laws, notices, rules and regulations and the contract with the district."

1953 Comp. § 75–24–29, as it existed prior to amendment by L.1953, c. 23, § 1 provided:

"Every person desiring to receive water during the course of the year, at the time he applies for water shall furnish the secretary of the board of directors of the said irrigation district, a statement in writing of the number of acres intended by him to be irrigated,

and a statement, as near as may be, of the crops planted or intended to be planted.

"The board of directors, on a date to be fixed by a standing order of the board, which shall not be later than July first, of each year, shall estimate and determine the amount of funds required to meet the obligations and needs of the district for the ensuing year, together with such additional amount as may be necessary to meet any deficiency in the payment of expenses or obligations previously incurred by the district and remaining unpaid, for such of the following purposes as may be required by the activities of the district, to-wit:

*   *   *   *   *   *

"Item Three. The portion of the expenses of operation and maintenance of the irrigation and drainage systems to be collected by tax assessment and levy, including funds required to meet obligations as provided in section 5 hereof. This portion shall not be less than one-fourth, nor more than two-thirds of the estimate for such operation and maintenance costs for the ensuing year, and shall be determined by the board of directors of said district from year to year, and the said portion of said operation and maintenance expenses so collected by tax assessment and levy, shall be collected from all lands of the district, whether irrigated or not except such lands as may be exempted from taxation by the terms of this Act, and the same, when collected, shall be applied to the cost of operating and maintaining of the irrigation and drainage systems. The remainder of said estimated amount shall be paid by the parties actually using said systems and water for irrigation or other purposes, in accordance with the terms of their contract for water; * * *."

It will be seen from a reading of the foregoing provisions of the applicable law that the board of directors of defendant irrigation district is given authority to fix rates and charges and collect the same of all persons using the canals and water for irrigation and may provide, in whole or in part, for the payment of expenditures for care, operation, management, repair and improvements, of all canals, ditches, reservoirs and works, or for charges to the United States for temporary rental of water, and may levy assessments therefor to cover both such tolls and assessments.

The governing statute goes on to provide that every person desiring to receive water during the course of the year, at the time of applying therefor must furnish the secretary of the board of directors a statement in writing of the number of acres intended by him to be irrigated, describing as near as may be, the crops planted or intended to be planted. It is made the duty of the board, on a date to be fixed by a standing order of the board, which must be not later than July 1st of each year, to

estimate and determine the amount of funds required to meet the obligations and needs of the district for the ensuing year, together with such additional amount as may be necessary to meet any deficiency in the payment of expenses or obligations previously incurred by the district and remaining unpaid for certain specified purposes, not material to this decision, but an expense so embraced is Item 3, mentioned in next succeeding paragraph hereof.

It is the portion of the expenses of operation and maintenance of the irrigation and drainage systems, embracing funds required to meet obligations in section 5 of the act. 1953 Comp. § 75-24-48. This portion was to be not less than one-fourth nor more than two-thirds of the estimate for such operation and maintenance costs for the ensuing years, and shall be determined by the board of directors of the district from year to year, to be collected from all lands in the district, whether irrigated or not, except such lands as may be exempted from taxation by terms of the act. The remainder of the estimated amount was to be paid by the parties actually using the systems and water for irrigation or other purposes in accordance with the terms of their contract for water.

On or before the 1st day of September of each year the federal government furnishes the district a statement, or rather an estimate of what it will charge the district for operation and management for the ensuing year. This estimate is payable forthwith. Thereafter, if, in the opinion of the Secretary of the Interior, the foregoing estimate appears to be insufficient to meet the actual cost, he shall give notice of any threatened deficiency, and his estimate of the amount due therefor and the district's share thereof, and the district is required to pay such deficiency within 15 days from date of notice, in default whereof, the United States is under no further obligation to deliver water to any lands in the district beyond the funds available therefor.

So it is that the plaintiffs contend unless the district is able to relate any assessment to produce revenues, made in excess of the minimum one acre foot assessment, to the cost of making delivery of the water, or to benefits conferred, or to conservation of water, the district is wholly without authority to levy such assessment, thereby establishing the plaintiffs' right to a refund of the moneys paid for water in excess of the charge for the minimum one acre foot of water. The plaintiffs are forced to admit there is nothing in the applicable statutes requiring charges for excess waters to be based on cost of delivery. We quote a passage from their brief in chief, reading:

"Our statutes do not expressly charge the defendant District with fixing tolls and charges on the basis of cost of delivering water, or on a basis of benefits conferred, but what could be a fairer basis for such?"

Moreover, they concede measurable discretion to defendant's board of directors in fix-

ing the charges for excess waters but say that discretion has been abused in the instant case. They do not claim any discrimination nor could they, since it is undisputed that all water users in the district were treated exactly alike and paid the same charges. Neither do they charge fraud, actual or constructive, in the levying of the challenged assessments. Oliver v. Board of Trustees of Town of Alamogordo, infra.

A review of the entire record is convincing that the learned trial judge correctly ruled that the district court lacked authority to interfere in the internal management and administration of the defendant as being conducted by its duly elected and functioning board of directors. Accordingly, his action in dismissing the complaints was entirely proper. We need not go beyond decisions of this Court, one of them dealing with the powers of the board of directors of this very defendant, to find authority supporting the trial judge in the view he took of the matter at issue before him in this case. See, Sperry v. Elephant Butte Irrigation District, supra, and Wiggs v. City of Albuquerque, 57 N.M. 770, 263 P.2d 963. While the factual situation involved in the Sperry case was not identical with that presented here, in its overall aspects it did involve the district court's power to interfere in the board's administration of the internal affairs of the district, with special reference to assessments, and what was there held has a persuasive bearing on the question now presented for decision Among other things, we said [33 N.M. 482, 270 P. 890]:

"Appellants rely particularly upon two statutory expressions. The one is found in section 21 as amended, and requires that the board meet annually and 'estimate and determine the amount of funds required to meet the obligations and needs of the district for the ensuing year.' The other is found in section 13, as amended, and makes it 'the duty of the board of directors to include as part of any levy or assessment now provided for by law, an amount sufficient to meet each year all payments accruing under the terms of any such contract.' Both are of general application to all estimates and tax levies.

"As we understand appellants' contention, it is that these expressions are so restrictive as to exclude from the board's estimates and from the resulting tax levies any amount, unless the board is prepared to show that it will actually and surely be required for disbursement during that year. In view of the court's finding, appellants are also driven to the position that the opinion of the board that such disbursement will probably be required is not a sufficient showing. If such was the intention of the Legislature, it results that, whenever owners of lands within the district see fit to challenge estimates of the board by injunction suit, the burden will rest upon the board to show

each item as a positive 'need' or an unescapable 'obligation.' We do not think that this district could operate practically or successfully under any such land owner surveillance or court dictation, and we therefore greatly doubt, at the outset, the intention of the Legislature to impose it.

"In construing this statute, in view of the large discretionary powers conferred upon the board (Laws 1921, c. 39, § 2) and without which the corporation could not successfully operate, we do not think we are bound to that strictness which applies when determining the powers of municipal corporations. See Crawford v. Imperial Irrigation Dist., 200 Cal. 318, 253 P. 726."

In the later case of Wiggs v. City of Albuquerque, supra, we applied the general doctrine of non-interference by the courts in matters committed to the discretion of municipal and quasi-municipal bodies, citing with approval 13 McQuillin, Municipal Corporations, 3rd Ed., § 37.25, to which may be added Oliver v. Board of Trustees of Town of Alamogordo, 35 N.M. 477, 1 P.2d 116; Nohl v. Board of Education, 27 N.M. 232, 199 P. 373, 16 A.L.R. 1085.

The defendant cites certain authorities from other states which lend strong support to the correctness of the trial court's conclusion in the case before us. Among them are Wores v. Imperial Irr. Dist., 193 Cal. 609, 227 P. 181; Willard v. Glenn-Colusa Irr. Dist., 201 Cal. 726, 258 P. 959, and Lundy v. Pioneer Irr. Dist., 52 Idaho 683, 19 P.2d 624. In the Willard case the Supreme Court of California, in an able and exhaustive opinion, deals with some of the questions presented here, especially one in which we are interested, namely, the levy of an assessment based upon an ascending or increasing scale of rates for water used by land owners. Its decision is epitomized in paragraph 5 of the syllabus as it appears in the Pacific Reporter, reading [201 Cal. 726, 258 P. 959]:

"Rules of board of directors of irrigation district organized under Irrigation District Act providing for ascending or increasing scale of rates for water used by landowners, *held* not unreasonable or unwarranted, even though there was ample water in district to meet all requirements of users in district."

In the Lundy case [52 Idaho 683, 19 P.2d 626], the Supreme Court of Idaho in the course of its opinion, dealing with the legality of assessments, among other things had this to say:

"The action of the board of correction in reviewing assessments for maintenance and operation is final and conclusive, unless there is proof of fraud, or that intentional, systematic discrimination which is the equivalent of fraud, which is not shown here."

The court went on to hold that the appellants were not entitled to recover excess

payments claimed to be invalid. Such was the holding of the district court with reference to the claim for refund of moneys paid for excess waters in the case at bar. It was not essential to validity of assessments levied for excess waters used that any specific reason therefor, such as cost of furnishing same, benefits conferred, or conservation of water, be declared the purpose of the levy. Other reasons for imposing it may very well have existed in the minds of the members of the board of directors.

For instance, the existence of a surplus to meet a deficiency in the estimate of the charge by the federal government may have been the controlling consideration. This had occurred on some prior occasions. At any rate, we think the broad powers conferred on the board in handling the fiscal policy of the district support the action of the trial court as against the challenge here made to the assessment.

The defendant maintains that, for still another reason, the plaintiffs may not have a refund of the moneys paid out for excess waters, namely, that the claims were not seasonably filed. The defendant interposes this defense without admitting the statute under which plaintiffs claim the refund may be invoked by them. The conclusion we have reached renders it unnecessary to determine this ground of defense against the plaintiffs' claims.

It follows from what has been said that the judgment of the trial court should be affirmed.

It will be so ordered.

COMPTON, C. J., and LUJAN and McGHEE, JJ., and EDWIN L. SWOPE, District Judge, concur.